Roy Gregory WOLFE, Executor for
the Estate of Roy Clement
Wolfe, Appellant

v.

Michelle YOUNG, Paula Vanover
and Marla Hays, Appellees

NO. 2016-CA-000540-DG

Court of Appeals of Kentucky.

JUNE 9, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Jason T. Ams, Timothy Dunn Jr., Lexington, Kentucky.

BRIEF FOR APPELLEE: J. Robert Lyons, Jr., Lexington, Kentucky.

BEFORE: CLAYTON, COMBS, AND TAYLOR, JUDGES.

OPINION

COMBS, JUDGE:

This is a case arising out of probate law in which we granted discretionary review.

Roy Gregory Wolfe contends that the circuit court erred by affirming an order of the district court order removing him as executor of his father's estate. Wolfe argues that the district court failed to apply the correct standard concerning the allegation of the other beneficiaries that he was unsuited to hold this fiduciary position. Having carefully considered the arguments of counsel and the law governing the issue, we agree that the district court erred by removing Wolfe as executor and that the circuit court erred in affirming the decision of the district court. Consequently, we reverse and remand.

Roy Clement Wolfe, a resident of Boyle County, died testate on February 21, 2014. His will was admitted to probate on March 20, 2014. Article I directed that the decedent's just debts, funeral expenses, taxes, and costs of administration be paid out of the residuary estate.

Article II granted Wolfe the exclusive option to purchase from the estate a log cabin located in Russell Springs—including all its furnishings. The will provided that Wolfe could buy the property within six months at the value assessed by the property valuation administrator on the date of death, and it authorized a partial distribution of the estate to enable Wolfe to pay for the real property.

Article III bequeathed to Wolfe "all of my tools and any boat owned by me at the time of my death."

Article IV bequeathed to the decedent's surviving children the household furniture and tangible personal property in his Danville home. The property was to be divided by agreement; if agreement could not be reached on any item within sixty days of death, the item was to be sold by the executor with the proceeds to be added to the residuary clause.

Article V provided that the residue of the estate would be divided in equal shares among the decedent's daughters, Michelle Young; Paula Vanover; Marla Hays; and his son, Roy Gregory Wolfe (per stirpes). Finally, the will named Roy Gregory Wolfe as executor of the estate.

Wolfe was duly appointed by order of the Boyle District Court. In his capacity as executor, Wolfe filed an inventory of his father's estate on May 16, 2014.

The inventory reported assets having a total estimated value of $1,276,269.00 and included: a position in Duke Energy valued at $518,345; a position in Spectra Energy Corp. valued at $408,924; the residence in Danville valued at $155,000; the cabin in Russell Springs valued at $130,000; two insurance policies valued at $27,000; tools at the Danville residence (including a lawn mower) valued at $15,000; tools at the cabin (including a lawn tractor) valued at $15,000; and a number of items of tangible personal property.

On June 5, 2014, through counsel, the decedent's daughters sent a letter to their brother demanding that Wolfe amend the inventory or otherwise account for assets that they alleged had been omitted from their father's estate. They contended that the inventory failed to include a 2008 truck (valued at $12,000); a man's diamond ring (valued at $25,000); a German carving set; a blue oriental bowl & plate; some glassware; some old love letters; a long, black coat; a purple heart medal; "silver"; guns; and some "new hand weights." They contested Wolfe's classification of the mower and yard tractor as "tools" and suggested that this alleged misclassification could constitute a breach of his fiduciary duties. They also objected to Wolfe's failure to allow them access to the real property and his decision to expend estate funds to improve the real property without notice to them—including some $7,000 spent on the

cabin and $13,000 on the Danville residence, which they preferred to sell "as is." Finally, they requested that the Duke Energy and Spectra Energy Corp. stock be distributed to them in kind.

On June 16, 2014, Wolfe responded to the letter, explaining his decisions and disposition of the disputed property. He denied that he intended to deprive his sisters of access to the real property and indicated that he had changed the locks only because he did not know if his father's caregivers had retained keys to the property. He specifically denied any breach of fiduciary duty to the estate.

On July 28, 2014, Young, Vanover, and Hays filed a motion in the district court demanding that Wolfe be removed as executor of the decedent's estate. They alleged that Wolfe had mismanaged the estate's assets. Wolfe responded to the motion and denied the allegations.

On April 30, 2015, the district court conducted an evidentiary hearing on the motion. Young, Vanover, and Hays presented their testimony challenging Wolfe's possession of the truck, the diamond ring, the tractor, and the lawnmower. They also testified concerning their objections to the expenses incurred with respect to the decedent's homes and the disputed liquidation and distribution of the Duke Energy and Spectra Energy stock.

Wolfe testified that his father had given him the pickup truck prior to his death and that he had given him the man's diamond ring over a decade earlier with the explanation that Wolfe's mother had intended for him to have it. Wolfe explained that he had interpreted the provision of decedent's will leaving to him "all of my tools and any boat owned by me at the time of my death" to include the tractor and the lawnmower. He indicated that the

expenditures for the upkeep of the real property owned by the decedent at his death were made while the properties remained in the estate and were necessary to fulfill Wolfe's obligations as executor to preserve the property.

With respect to his sale of the disputed stock, Wolfe testified that there were insufficient liquid assets in the estate to pay the decedent's funeral expenses and expenses related to the estate's administration after his sisters had distributed the funds from the decedent's payable-on-death checking account. Wolfe explained that he had liquidated the Spectra Energy stock (at a market high) before he received the letter requesting its in-kind distribution and pursuant to his authority under the terms of the will and the provisions of KRS [1] 395.200. Concerning the Duke Energy stock, Wolfe indicated that the sale of part of the position did not affect the request of the remaining beneficiaries' request for a distribution in kind and that he had taken a partial distribution of the stock pursuant to the provision of the will that entitled him to make that distribution if it was necessary to enable him to purchase the cabin in Russell Springs from the estate. Finally, Wolfe indicated that he had hired an accountant to assist him in his responsibilities as executor.

On December 4, 2015, the district court entered its order. The court did not make findings of fact concerning the allegations underlying the motion and did not rule on the specific claims asserted by Young, Vanover, and Hays. After considering the evidence, the court concluded that there existed a "controversy which constitutes a conflict of interest and potential breach of fiduciary duty" by Wolfe. It held that "the nature of the disputes are so severe" that Wolfe "is incapable of performing his duties" as executor. By its order entered

---

1. Kentucky Revised Statutes.

on December 4, 2015, the district court removed Wolfe as executor and substituted Chris Herron, a local attorney, to serve as public administrator of the decedent's estate.

On appeal, the circuit court cited Wolfe's decision to sell the stock, to use estate funds for the upkeep of the decedent's cabin in Russell Springs, and to distribute to himself $67,605.41 from the liquidated stock as constituting "a clear indication that [Wolfe] is incapable of discharging the trust." The circuit court held that the district court did not abuse its discretion by ordering Wolfe removed as executor.

Wolfe petitioned to this Court for discretionary review, which we granted by order entered on August 11, 2016.

■ Wolfe argues that his removal as executor of the decedent's estate was unwarranted because the proper standard for removal is that an executor has taken action or has made a claim against the estate in bad faith. In the alternative, he contends that the decisions challenged by Young, Vanover, and Hays concerning a relative few assets are typical issues arising in probate matters and are not of sufficient gravity to warrant a finding that he is incapable of discharging his duties as executor of the estate. Wolfe explains that by the time of his removal, he had completed most of the tasks related to the administration of the estate and that he was prepared to pay the remaining expenses and to distribute the estate assets among the beneficiaries. He contends that the issues raised by Young, Vanover, and Hays would have been addressed more properly in connection with the final settlement that he was preparing to file with the court. We agree.

The provisions of KRS 395.160 authorize the district court to remove the estate's personal representative where the personal representative: moves out of the state and fails to designate a process agent; becomes insane "or otherwise incapable to discharge the trust"; goes bankrupt; or is in failing circumstances. While not addressed by the statute, our case law suggests that the removal of an executor named by the testator requires a heightened standard and a much more convincing showing of impropriety than would the removal of a court-appointed administrator. *See Karsner's Ex'r v. Monterey Christian Church,* 304 Ky. 269, 200 S.W.2d 474 (1947). For instance, in *Kuechler v. Rubbathen,* 266 Ky. 390, 99 S.W.2d 193, 195 (1936), the former Court of Appeals observed as follows:

> The trend of authority seems to be to the effect that the court may remove an administrator for a cause which would not justify the removal of an executor, or a refusal to permit him to qualify, which is tantamount to removal. The rule for the distinction is obvious. An administrator of the estate of an intestate is appointed solely by the court, while an executor is appointed or designated by the testator, and it is the duty of the court to permit the named executor to qualify unless he is disqualified under the [statute], or other good and substantial reasons be claerly [sic] established.

The distinction has been further explained:

> The right to appointment as an administrator of an estate is a valuable one, and the party entitled to it should not be deprived of it without legal cause. A fiduciary is not subject to the arbitrary control of the appointing court on the issue of removal from such position of trust. And, while the district courts are generally vested with a broad discretion in determining whether an executor or administrator shall be removed from office, unless some good sound reason is shown the removal should be denied. *On*

*this subject a distinction must be made between executors and administrators, since it is held that stronger proof is necessary to disqualify and remove an executor named by the testator, than is necessary to remove an administrator named by the court.* With regard to the statutory grounds for removal, it should be noted that "otherwise incapable to discharge the trust" is held to constitute an independent ground for removal of a fiduciary; and the quoted words are susceptible of a broad and general interpretation in that they have been held to embrace mismanagement and waste which will result in substantial loss to the distributees.

4A William B. Bardenwerper et al., Kentucky Practice-Methods of Practice Sec. 27:32 (2015 ed.) (footnotes omitted) (emphasis added).

In *Adams v. Readnour*, 134 Ky. 230, 120 S.W. 279, 282, (1909) the court noted that a testator nominates an executor "[f]or reasons satisfactory to himself...." The testator may prefer such executor "because of his confidence in him or his knowledge of the latter's business qualifications." *Id.* The appellate court reinforced the primacy of the testator's intent: "[s]o far as possible, the court should carry out the intention of the testator by seeing that the trust is committed to the one designated by the testator." *Id.*

The various reasons underlying the dissatisfaction expressed by Young, Vanover, and Hays about Wolfe's decisions concerning the estate can be distilled into their disagreement about his interpretation of the will's provisions; his claim to certain property given to him by his father outside the will; his failure to provide them access to the real property; his expenditure of funds to improve or maintain the real property; and the disposition of the stock. Nothing in the nature of these disputes indicates that Wolfe is incapable of performing his remaining duties as executor of the estate fairly and judiciously.

Wolfe, the decedent's son, claims property given to him by the decedent before his death. As a result, he has an interest antagonistic to others entitled to participate in the distribution of the estate. However, under the circumstances, this fact alone fails to provide sufficient cause for his removal as executor. *See Trevathan v. Grogan*, 210 Ky. 694, 276 S.W. 556 (1925). Similarly, the beneficiaries' disagreement with Wolfe's construction of the will falls far short of warranting his removal. *Rieke's Adm'r v. Rieke*, 183 Ky. 131, 208 S.W. 764 (1919). While Wolfe may (or may not) have erred with regard to the claims he makes to the lawn mower and lawn tractor under the provision of the will bequeathing him the decedent's "tools," this was not a question to be answered in a removal proceeding. *See Ewald v. Citizens Fidelity Bank & Trust Co.*, 305 S.W.2d 533 (Ky. 1957).

As executor, Wolfe was charged with maintaining and preserving the value of the decedent's residence in Danville and the cabin in Russell Springs. At the recommendation of a realtor, Wolfe made the necessary repairs and paid for the maintenance of the real property from the estate. Although Young, Vanover, and Hays preferred to sell the real property "as is," the decision was not theirs to make. Wolfe undertook to pay for the maintenance of the cabin once title had passed to him. There was no clear indication from these decisions that Wolfe was incapable of discharging the trust.

■ Young, Vanover, and Hays also disputed Wolfe's decision to sell the shares of common stock in Spectra Energy and a portion of the shares of the Duke Energy stock that the decedent owned at his death. As executor, Wolfe decided that liq-

uidating the concentrated position in Spectra Energy at a favorable price was prudent and would preserve the value of the estate. Since the decedent's will did not include a specific bequest of the stock and did authorize Wolfe to sell any personal property at his discretion, he properly sold the Spectra Energy stock. While Young, Vanover, and Hays indicated that they had demanded an in-kind distribution of the stock, Wolfe explained (and the sell order confirmed) that he did not receive their letter so stating until after he had given the order to sell. With respect to the Duke Energy stock, Wolfe indicated that the entirety of the shares to be distributed to the beneficiaries—in kind—remains in the estate.

The objection of Young, Vanover, and Hays to Wolfe's having changed the locks on the residence and the cabin does not merit legal analysis. The nature of this disagreement among the siblings does not rise to the level necessary to show cause for Wolfe's removal as executor of the estate.

The allegations made against Wolfe by Young, Vanover, and Hays were meant to show that Wolfe acted in ways hostile to their wishes or at least that he failed to consult with them regarding his decisions concerning the estate, and, for this reason, that Wolfe could not be fair with them in the settlement and distribution of their father's estate. However, the law presumes honesty and fair dealing among people. *Kuechler, supra.* The district court abused its discretion by anticipating or presuming Wolfe's dishonesty and unfair dealings before any such bad intention had been clearly established. Consequently, we conclude that the complaints and allegations made by Young, Vanover, and Hays against Wolfe do not constitute evidence of his unfitness to discharge the trust which his father bestowed expressly upon him.

We reverse the order removing Wolfe as executor of the estate, and we remand for entry of an order consistent with this opinion.

ALL CONCUR.